UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MONIQUE BENN,

                              Plaintiff,                      NOT FOR PUBLICATION
               -against-                               **MEMORANDUM & ORDER**
                                                              09-cv-4470 (CBA) (LB)

DETECTIVE JOHN KISSANE, Shield No.
4927, DETECTIVE CHRISTOPHER
BOLLERMAN, Shield No. 7232, FIRE MAR-
SHALL FARRELL MICHAEL, STEPHEN M.
CALCUTTI, FIRE MARSHALL O'KEEFE
STEPHEN, THE CITY OF NEW YORK,

                              Defendants.
------------------------------------------------------------X
**AMON, Chief United States District Judge**.

      Plaintiff Monique Benn brings this 42 U.S.C. § 1983 action for false arrest and malicious prosecution against Detectives John Kissane and Christopher Bollerman.[1] For the reasons that follow, the Court grants the defendants' motion for summary judgment.[2]

## BACKGROUND

      The undisputed material facts, as set forth in the current record and the parties' Rule 56.1 statements and exhibits, are as follows. On the evening of July 18, 2006, a fire occurred on 103-15 169th Street in Queens County, New York, resulting in the deaths of two individuals. Shortly before the fire broke out, Michelle Lesane, a tenant of the building, was seen moving her

---

[1] The amended complaint also names as defendants Fire Marshall Michael Farrell, Fire Marshall Stephen Calcutti, and Fire Marshall Stephen O'Keefe. In her memorandum in opposition to summary judgment, the plaintiff voluntarily dismisses with prejudice her claims as to those defendants. The amended complaint also named the City of New York, but failed to assert any state law claims against the City or any claims under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 693 (1978). The City is accordingly dismissed as a defendant in this action.

[2] A district court may grant summary judgment if the evidence shows "that there is no genuine issue as to many material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c).

belongings out of her apartment. She was helped by the plaintiff, Monique Benn, and two other male friends, Gary Mariner and Bryan Gibson.

On October 4, 2006, Detective Kissane arrested Benn for arson and a double homicide in connection with the fire. At the time of the arrest, Detective Kissane had available to him a FDNY Fire Incident Report that concluded the fire was started intentionally. (Defs.' 56.1 Stmt. Ex. B.) He also had the following information from statements given by Benn, Lesane, Mariner Gibson, Lesane's daughter, and witnesses Harold and Jamie Williams.

Benn provided a written statement dated July 26, 2006. (Defs. 56.1 Stmt. Ex. 5.) She admitted to helping Lesane move out of the apartment on the day in question. She also stated that when they entered the building, a man was smoking a cigarette at the top of the stairs on the second floor of the apartment. She said that as they were leaving the house, somebody yelled that the house was on fire. Benn left the scene, but Lesane stayed behind to call the police. Benn stated that she did not recall who exited the house last.

Lesane provided a written statement dated August 1, 2006. (Pl.'s 56.1 Stmt. Ex. 6.) She also told the police that when she entered the house that evening, there was a man coming down the stairs lighting a cigarette. Lesane stated that as the group was moving her stuff out of the apartment, they smelled something. Benn said "don't worry about the smell just hurry up and get [Lesane's] stuff." Once all of Lesane's belongings were moved out of the apartment, Lesane told Gibson, Mariner and Benn to go on ahead with the car while she stayed behind to wait for a cab to move the rest of her belongings. As they drove off, someone came out of the house next door yelling that the house was on fire. Lesane called 9-11 to report the fire. Lesane's daughter, who was helping with the move, told the police later that her mother had told her there was a

man in the house who was standing on top of the basement stairs, but Lesane's daughter said she never saw the man. (Pl.'s 56.1 Stmt. Ex. 7.)

The police received written statements from witnesses Harold and Jamie Williams, who arrived at their home on 169th Street around the time the fire started. (Pl.'s 56.1 Stmt. Ex. 8, Ex. 22.) In a written statement dated July 26, 2006, Jamie Williams said that when she and her husband arrived home she heard "banging and raucous" inside the building. (Pl.'s 56.1 Stmt. Ex. 22.) She saw Lesane with her children, two adult males, and one adult female moving Lesane's property out of the house into a Blue SUV. At that point, Jamie Williams drove away down the street to run an errand, but got a call from a friend who said "come back to the house, the house is on fire." As she drove home, she saw the same Blue SUV pass her, and the driver was one of the men who had been helping Lesane move. There were other people in the car Jamie Williams could not see. She said the "driver looked nervous and he was in a rush to get around my car."

In his statement dated August 10, 2006, Harold Williams similarly explained that he saw Lesane, a female, and two males come out of the building with mattresses, which they tied to the vehicle. (Pl.'s 56.1 Stmt. Ex. 8.) The two males then went back into the house, and Williams heard them "destroying the place." He said the female, who was still outside in the street, yelled "Gary that's enough come on let's go," and then the two men left the house. After they drove away, Williams smelled smoke.

Finally, from July to September 2006, Gary Mariner and Brian Gibson each made multiple written statements to the detectives investigating the incident. At first, neither admitted to damaging the apartment, and neither implicated Benn in the arson. However, on September 29, 2006, they both gave written statements in which they admitted to damaging the apartment and implicated Benn. Mariner stated in his September 29 statement that during the move,

3

Lesane and Benn were talking about how Lesane had a history of problems with her landlord. (Defs.' 56.1 Stmt. Ex. N.) He said Benn asked for a hammer and then he heard banging throughout the house. Eventually they all started to join in on breaking and kicking the wall. He stated that he "knew something was up do [sic] to the fact that [Benn] had entered the house with a small container of lighter fluid when I last exited the house." He stated that Benn "explained to me that she lit a mattress on fire in the back of the house and we needed to leave now." He went on to explain that, after the group had dispersed, Lesane called them all to say that they needed to talk. When the four of them got together, Lesane explained what was being said in the news about the fire. In response, Benn said that "if anyone comes to us we should leave out the fact of breaking the wall and what she did and we should stick to what we came there for and that was it." Mariner stated that Benn "conjured up" the story about a man being there when they arrived.

Gibson admitted in his September 29 statement that he and Mariner damaged the apartment while they were helping Lesane move and that they left the apartment at some point when Benn "yelled about let's hurry up." (Defs.' 56.1 Stmt. Ex. O.) Gibson stated that once they had left the apartment, Benn "stated that we had to leave because she lite [sic] a mattress in the backroom." He explained that it was after they got back to Lesane's apartment that Benn "tried to speak of a man that was there." He confirmed Mariner's story that the four of them met up the next day and that "Lesane told us that she had heard on the news the people died and we had to talk about what happened." At that point, Benn "again mentioned the man," but Gibson explained that "there was no man."

Based on this information, Detective Kissane arrested Benn, and a grand jury ultimately indicted her on two counts of Murder in the Second Degree by way of depraved indifference,

4

two counts of Murder in the Second Degree by way of causing the death of another during the commission of an arson, one count of Reckless Endangerment in the First Degree, one count of Arson in the Third Degree, five counts of Arson in the Fourth Degree, and one count of Criminal Mischief in the Fourth Degree. A criminal court judge reviewed the sealed minutes of the grand jury proceedings and determined that there was sufficient information to support the indictment. The case proceeded to trial and, on February 5, 2009, Benn was found not guilty of all pending criminal charges against her. She subsequently filed this lawsuit.

**DISCUSSION**

**1.    False Arrest**

In order to state a claim for false arrest, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Weyant v. Okst, 101 F.3d 845, 852 (1996) (quoting Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Id. (internal quotation marks omitted). Moreover, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists if it was "objectively reasonable for the officer to believe that probable cause existed." Id. Thus, "summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." Jenkins v. City of N.Y., 478 F.3d 76, 88 (2d Cir. 2007).

5

Benn argues that the defendants' probable cause determination was not objectively reasonable because the defendants did not have "reasonably trustworthy information" that would lead a reasonable person to think Benn had started the fire. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) ("Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."). In particular, Benn faults the detectives for relying on the written statements of Mariner and Gibson because they were "self-confessed criminals who vandalized the very same property minutes before it went up in flames" (Pl. Br. 13) and because they kept changing their story about what happened. Benn argues that other evidence available to the officers at the time of her arrest exculpated Benn, including (1) the statement of Harold Williams, which Benn argues contradicts the story told by Mariner and Gibson by establishing that Benn was not the last person to leave the apartment; (2) the statements of Lesane and her daughter, which did not implicate Benn in the arson; and (3) the fact that no physical evidence at the scene of the fire confirmed the presence of a burnt mattress or accelerator.

The Court finds these arguments unavailing. Benn admitted to being at the apartment moments before the fire started, and it was reasonable for the defendants to credit the statements of Mariner and Gibson, in which they admitted to damaging the apartment, and both said that Benn admitted to starting the fire. Thomas v. Culberg, 74 F. Supp. 77, 80 (S.D.N.Y. 1990) ("Officers have probable cause to arrest if they receive "information from some person— normally the putative victim or eyewitness—who it seems reasonable to believe is telling the truth."). The fact that they did not come forward with this information immediately does not vitiate probable cause, particularly in light of the fact that they were motivated to conceal this

information so as not to implicate themselves, and in order to cover up for a friend. Benn contends that it is significant that Mariner and Gibson "changed their stories" to implicate Benn only after Harold Williams told the police that he heard them destroying the house while Benn remained outside. However, Benn has presented no evidence indicating that Mariner and Gibson knew Williams had provided a statement, or that they had any other motive to change their story.

During oral argument, Benn's counsel argued that, under the totality of the circumstances, the police should have doubted the reliability of Mariner and Gibson, who were essentially accomplices in this case. In so arguing, counsel relied on Roundtree v. City of New York, 208 A.D.2d 407 (N.Y. App. Div. 1994), in which the court held that, even though an accomplice named the plaintiff as the perpetrator, probable cause was lacking "given the indicia of unreliability in the [accomplice's] statement." Id. at 407. In Roundree, the accomplice's statement was deemed incredible because there were several discrepancies in his statement, physical evidence of the crime was found in the accomplice's apartment, the accomplice had sole access to the location where the victim was found, and the police officers failed to conduct an independent investigation to corroborate the statements before arresting the plaintiff. Contrary to counsel's suggestion, Roundtree does not stand for the proposition that probable cause cannot be based on the incriminating statement of an accomplice. In fact, the court in that case acknowledged that "the statement of an accomplice identifying a named individual as the perpetrator of a crime is legally sufficient to provide probable cause to arrest." Id.; see Chandler v. Napoli, No. 08-cv-3284, 2011 WL 4382265, at *6 (E.D.N.Y. July 19, 2011) ("In any case, an accomplice's uncorroborated testimony must be sufficient to meet the standard for probable cause because it is sufficient to convict a defendant at trial.").

7

The detectives in this case were not presented with the same "indicia of unreliability" as those in <u>Roundtree</u>. To the contrary, the detectives investigated the arson for months before arresting Benn, and interviewed several witnesses who corroborated most of Mariner's and Gibson's account of what happened, including Benn's presence at the scene and the destruction of the property. Benn argues that the statement of Harold Williams, which placed Monique Benn outside the house while Mariner and Gibson went inside to cause property damage, was significant evidence that exculpated Benn. However, the statement of Harold Williams was not necessarily inconsistent with those provided by Mariner and Gibson. Mariner and Gibson both told the detectives that, at some point, Benn told them to hurry up and leave the house. Williams's statement confirms this. Mariner and Gibson did not explain when they received this warning, and they could have gone back in the house after receiving it. The fact that Benn might not have been the last to leave the house did not prove, or even suggest under the facts of this case, that she did not start the fire.[3]

In any event, probable cause is not destroyed merely because there are some inconsistencies in the various witnesses' accounts of the facts of a crime, or by a lack of physical evidence. <u>See</u> <u>Curley v. Village of Suffern</u>, 268 F.3d 65 (2d Cir. 2001) ("[W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee. . . . Nor does it matter that an investigation might have case doubt upon the basis for the arrest."). In this case, the Court finds that the statements provided by Gibson and Mariner—combined with evidence that the fire was started intentionally and Benn's admission (confirmed by eye witness testimony) that she was at the scene of the fire moments before it

---

[3] The Court is also not persuaded by Benn's argument that the statements of Lesane and her daughter are exculpatory simply because they failed to incriminate her. Similarly, the Court rejects Benn's argument that the physical evidence at the scene shows that there was no mattress or lighter fluid used. The physical was inconclusive as to the presence of an accelerator, and thus did not exculpate Benn. As to the lack of mattress remains, the defendants presented the testimony of Fire Marshalls that such evidence is not always found.

8

erupted—provided Detective Kissane with "reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief" that Benn had started the fire. Golino, 950 F.2d at 870. Probable cause supported Benn's arrest, and the defendants are therefore entitled to summary judgment on her false arrest claim.

**2.    Malicious Prosecution**

For the same reasons that the defendants had probable cause to arrest Benn, the Court finds that there was probable cause to initiate criminal proceedings against her. Benn has not shown that any exculpatory evidence came to light between her arrest and the commencement of her prosecution that would dissipate probable cause. See Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996) (affirming dismissal of malicious prosecution claim where plaintiff failed to show that probable cause dissipated between valid arrest and commencement of criminal proceedings).

In addition, Benn was indicted by a grand jury, and probable cause for her prosecution is thus presumed to have existed. McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006). To rebut this presumption, Benn argues that the indictment was fraudulently procured because the "exculpatory" testimony of Harold Williams was not presented to the grand jury. As explained above, however, the Court is not convinced that Williams's statement can be considered exculpatory. Even if it were, it was certainly not of such significance to give rise to a prosecutorial duty to present it to the grand jury. See United States v. Williams, 504 U.S. 36, 51-52 (1992) (holding that a prosecutor has no legal obligation to present exculpatory evidence in his possession to the grand jury); United States v. Regan, 103 F.3d 1072, 1081 (2d Cir. 1997) ("The government had no obligation to present exculpatory material to a grand jury.").

Accordingly, the defendants are entitled to summary judgment on Benn's claim for malicious prosecution.

## CONCLUSION

The defendants' motion for summary judgment is granted in full. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: Brooklyn, N.Y.
　　　　November 10, 2011　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　Carol Bagley Amon
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge